UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

ADAN MENDEZ,                                    Case No. 09-10662
                                                Chapter 7
                Debtor.                         Hon. Scott W. Dales

_____/


MEMORANDUM OF DECISION AND ORDER

PRESENT:     HONORABLE SCOTT W. DALES
             Chief United States Bankruptcy Judge

From the bench on May 22, 2014, the court announced its intention to grant the motion of chapter 7 trustee Scott A. Chernich (the "Trustee") to sell a 35 acre blueberry farm in Allegan county (the "Property") to William E. Chase (the "Purchaser") for $135,000.00.  In doing so, the court overruled the objection of the debtor, Adan Mendez (the "Debtor"), for reasons stated on the record.  This Memorandum of Decision supplements the court's reasons for its ruling.

Prior to filing, the Debtor and his non-filing spouse, Celia Mendez, owned the Property as tenants by the entireties.  Invoking § 522(b)(3)[1] and M.C.L. § 600.5451(1)(o), the Debtor claimed the Property as exempt to the full extent of its scheduled value.  Pursuant to Bankruptcy Rule 4003(b), the Trustee objected on the premise that the existence of joint claims against the Debtor and his spouse precluded the exemption to some extent.  *See* Trustee's Objection to Amended Exemption (the "Rule 4003 Objection," DN 124); *see also Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 776 (6th Cir. 1985) (trustee may administer otherwise exempt entireties property for joint creditors under the Bankruptcy Act); *Spears v.*

---

[1] Unless otherwise noted, statutory citations in this Memorandum of Decision and Order refer to Title 11, United States Code.

*Boyd (In re Spears)*, 313 B.R. 212, 218-19 (W.D. Mich. 2004) (same under the Bankruptcy Code); *Michigan National Bank v. Chrystler (In re Trickett)*, 14 B.R. 85, 89-90 (Bankr. W.D. Mich. 1981) (same under the Bankruptcy Act).

By Order dated January 30, 2012 (the "Exemption Order," DN 140), the Honorable Jeffrey R. Hughes sustained the Rule 4003 Objection by prescribing a procedure and deadlines to identify and quantify joint claims and, thereby, determine the non-exempt portion of the Property. The various deadlines expired without controversy and the court's decision sustaining the Rule 4003 Objection became final on August 3, 2012. In accordance with that procedure, the court determined that the non-exempt portion of the Property "is equal to the amount set forth in the Joint Claims List" -- $33,897.35 as it turns out. *See* Exemption Order at 2; *see also* Chapter 7 Trustee's Report of Joint Claims List (DN 142). The Debtor has not amended his exemption claim since the court sustained the Trustee's Rule 4003 Objection.

As directed in the Exemption Order, the Trustee began to administer the Property by evicting a tenant, engaging a realtor, and commencing an adversary proceeding against the Debtor's non-filing spouse under § 363(h) after she evidently balked at the prospect of a sale. The Trustee obtained a default judgment against her, which authorized him to sell her interest together with the estate's interest in the Property. *See* Order Granting Entry of Default Judgment (the "Default Judgment," DN 9 entered January 22, 2014 in *Chernich v. Mendez*, Adv. No. 13-80275). Eventually, the Trustee negotiated with the Purchaser for the sale of the Property.

On April 29, 2014, the Trustee filed a motion to sell the Property (the "Motion," DN 163) and the Debtor has filed an objection (the "Debtor's Objection," DN 169). The Motion recites the Trustee's efforts to sell the Property over the last seventeen months, and notes some urgency

because the Property is used as a blueberry farm and its value depends to some extent on preparing the seasonal crop for harvest.

According to the Debtor's Objection and statements of his counsel at the sale hearing, the Debtor has made arrangements to satisfy or compromise the two joint claims upon which the Trustee's initial efforts to administer the Property were premised.  In fact, by the time of the sale hearing, one of the joint claim holders purported to withdraw his claim.  S*ee* Notice of Withdrawal of Proof of Claim and Deadline to Object to Proposed Withdrawal (DN 160).  In effect, after over two years of the Trustee's efforts to obtain authority to administer the Property and to take substantial steps to obtain authority to sell it, the Debtor and the joint creditors endeavored to take the wind out of the sale (so to speak) by eliminating the joint claims upon which the Exemption Order was premised.

The Trustee's proposed sale is amply supported as an exercise of his business judgment. In the Motion, and in more detail at oral argument, he described his efforts to market the Property.  He has exposed it to the market for almost a year and a half with the help of a court-appointed realtor, and the court has no reason to doubt that the Trustee and the Purchaser negotiated at arm's length.  No party in interest has challenged the *bona fides* of the sale. Indeed, the only objection that the Debtor offered was premised on the eleventh hour arrangements regarding the withdrawal or the purported and future withdrawals of the two joint claims.[2]

At the sale hearing, the Trustee reported without contradiction that his efforts to administer the Property have generated administrative claims in the form of filing fees, attorney

---

[2] At the hearing, the Debtor's counsel, who confirmed that he represented only the Debtor, attempted to withdraw the claims of HSBC Mortgage Services Inc. and Albion Financial Services, Inc.  The court did not accept the documents at the hearing, although Debtor's counsel later filed them electronically.  *See* (DNs 178 and 179, respectively).

fees, potentially brokers' commissions, and other charges that will go unpaid if the court does not permit him to sell the Property.

After considering the parties' arguments, the court rejected the Debtor's Objection for several reasons. First, both the Exemption Order and the Default Judgment are final orders, not appealed or stayed, authorizing the Trustee to administer the Property and to sell it (subject to the court's further order which the Trustee now seeks). The existence of the joint claims at the time Judge Hughes sustained the Rule 4003 Objection determined that the non-exempt portion of the Property equals $33,897.35, and the Exemption Order directed the Trustee to administer the non-exempt portion of the Property. Indeed, exemptions are generally determined as of the petition date, and it is not clear how the Debtor's recent machinations regarding the joint claims, without more, could change his exemption claim or modify the Exemption Order.

Second, though related, the Default Judgment expanded the Trustee's sale authority to include the undivided interest of both the Debtor and his spouse. In reasonable reliance on the court's orders and the Debtor's (and his non-filing spouse's) inactivity in connection with the joint claims or the Property, the Trustee obviously incurred administrative expenses which, he plausibly reports, will go unpaid if the sale does not take place.

Third, the court decided to grant the Motion because the Trustee has established the usual business and statutory justification for selling estate property. For example, as of the hearing, the joint claims remained on file, which could be paid from the sale proceeds together with the Trustee's administrative claims. More specifically, as to the claim of George Dunn (Claim No. 19-1), the Trustee objected to the purported withdrawal of the claim on the ground that Mr. Dunn had by that time irrevocably assigned it to Albion Financial, Inc., and, therefore, lacked authority

to withdraw it.[3]  As to the claim of HSBC Mortgage Services, Inc. (Claim No. 13-1), that claim remained on file as of the hearing date and, because the Debtor had filed an objection to the claim, the creditor is not free to withdraw it as of right in any event.  *See* Fed. R. Bankr. P. 3006 (creditor may not withdraw claim as of right after a claim objection has been filed); *see also* Objection to Joint Claim No. 13-1 of HSBC Mortgage Services, Inc. (the "HSBC Claim Objection," DN 170).

For these reasons, the court ruled from the bench that it would grant the Trustee's Motion.

Immediately after the court announced its decision, the Debtor's counsel reported that he received a higher offer for the Property.  The timing of this revelation, together with the efforts to erase the joint claims, deeply troubles the court for a number of reasons,[4] not the least of which is that it tends to undermine public confidence in the transparency and efficacy of bankruptcy sales and the claims allowance process.[5]  Given the court's view of the Exemption Order, however, the belated disclosure of a higher offer likely has no adverse impact on the estate or its creditors: the non-exempt portion of the Property is capped as prescribed in the Exemption Order and the sale price far exceeds that value, plus the tax liens.

---

[3] The court announced its intention to sustain the Trustee's objection to the purported withdrawal of Claim No. 19-1 for that reason, in the absence of any response from Mr. Dunn or Albion Financial, Inc.

[4] Concealing the offer until after the court announced a decision adverse to the Debtor displayed an alarming lack of candor.  For example, while the Trustee reported to the court that his sale efforts produced a single offer, opposing counsel sat silently with another offer literally in his pocket.

[5] These antics pose the real possibility of prejudicing the rights of the joint claimants who cannot participate in the distribution of estate assets without having an allowed claim on file.  If, having withdrawn their claims, they later reconsider the decision and re-file their claims, the Trustee may treat the claims as tardily filed under § 726(a)(3), or by then he may have returned the surplus sale proceeds to the Debtor and his wife under §§ 363(j) and 522(*l*), making it impossible (post-discharge) to collect from the Debtor and more difficult to collect from the wife. Induced to withdraw or compromise their claims, the joint creditors could find themselves without a meaningful opportunity to participate in the distribution of estate property.  Moreover, the court is not certain why HSBC Mortgage Services, Inc. would accept a deeply discounted payment in the amount of $8,698.31 on its $28,994.38 claim (Claim No. 13) if it had known that the Trustee's sale of the Property two or three months later might have paid the claim in full under *Trickett*, *Spears,* and *Grosslight*.  *See* HSBC Claim Objection at Exh. B.

The Debtor's manipulation of the joint claimants and the sale process at this late date smacks of laches. The court's prior orders, the Debtor's prejudicial delay, and the Trustee's business judgment amply warrant the continued administration of the Property, including the sale as proposed by the Trustee, if he chooses to pursue it.

Finally, the Debtor's counsel's strategy presents an object-lesson in the pitfalls of overzealous advocacy. The tactics employed in response to the proposed sale likely reduced the sale proceeds, ultimately harming the client that the sharp practice was evidently intended to benefit. In the process, the approach unfortunately damaged relationships, eroded trust, tarnished the reputation of individual lawyers and, perhaps, the profession more generally. With a practice like ours that depends so heavily on trust among counsel and the court, a spirit of candor should guide a lawyer's response to difficult controversies.

For the foregoing reasons and those given on the record at the conclusion of the sale hearing, the court will grant the Motion in a separate order to be prepared by the Trustee, who shall hold the sale proceeds pending further order of the court.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee shall submit a proposed order granting the Motion, if he has not already done so.

IT IS FURTHER ORDERED that, except as otherwise provided in the order granting the Motion, the Trustee shall hold any sale proceeds for distribution pending further order of the court.

IT IS FURTHER ORDERED that the automatic stay of this order under Fed. R. Bankr. P. 6004 shall remain in effect for 14 days after entry of the court's order granting the Motion.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Adan Mendez, Paul F. Davidoff, Esq., Scott A. Chernich, Esq., the United States Trustee, and all parties listed on the Debtor's mailing matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 29, 2014**



Scott W. Dales
United States Bankruptcy Judge